UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:09-CR-216-4FL

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **DEFENDANT'S SENTENCING** |
| v. | ) | **MEMORANDUM** |
| | ) | |
| | ) | |
| **ZAKARIYA S. BOYD,** | ) | |
| Defendant. | ) | |

NOW COMES Myron T. Hill, Jr., court appointed attorney for the above referenced defendant, and submits this Sentencing Memorandum for consideration by the court at the sentencing currently set for December 20, 2011 at the United States District Courthouse in New Bern, North Carolina.

### PLEA AGREEMENT, TESTIMONY AT TRIAL, AND SUBSTANTIAL ASSISTANCE

Zak Boyd was the second defendant in this case to plead guilty pursuant to a written plea agreement after his father, Daniel Boyd, entered a plea of guilty. Zak Boyd plead guilty on June 7, 2011. Zak plead guilty to Count One: Conspiracy to Provide Material Support to Terrorists in violation of 18 U.S.C. Section 2339A. The maximum sentence that can be imposed with regard to this Class C felony is fifteen years imprisonment and a maximum fine of $250,000.00. On September 14, 2011, his co-defendant and brother, Dylan Boyd entered a plea of guilty to aiding and abetting the conspiracy charge in Count One, approximately 3 months after Zak Boyd entered a plea of guilty. Zak's plea of guilty was instrumental in his brother entering a plea of guilty at a later date, thereby saving the Government the time and expense of a jury trial.

Zak Boyd was interviewed numerous times with counsel present prior to and after the entry of his plea. Additionally, Zak was prepped for trial on numerous occasions by the Assistant United States Attorneys prosecuting this case. Zak Boyd did testify at trial for approximately two days. Zak was honest and provided truthful testimony in response to the Government's questions.

Additionally, pursuant to the Memorandum of Plea Agreement, the Government agreed that the defendant should receive a downward adjustment of three levels for acceptance of responsibility pursuant to the U.S.S.G. Section 3E1.1. Also, it is important to note in the Plea Agreement "The Government also recognizes that the level of influence asserted on the defendant by his father in relation to the charged conduct was remarkable and needs to be calculated into the ultimate sentence." Defense counsel also anticipates a substantial assistance 5K 1.1 Motion to be filed by the Government on behalf of his client due to his substantial assistance.

**SECTION 3553(a) FACTORS AND REQUEST FOR MITIGATED SENTENCE**

The advisory sentencing guideline range is but one factor to be considered by the court in reaching an appropriate sentence under 18 U.S.C. 3553(a). Zak Boyd respectfully submits that consideration of the facts of his case, his history and background, and application of the Section 3553(a) factors, results in a downward variance/departure sentence from the applicable advisory guideline range. Zak asks the court to consider the following factors in support of a downward variance sentence:

A. **DEFENDANTS AGE AT THE TIME OF OFFENSE**.

According to the pre-sentence report, the investigation into the activities of Daniel Boyd was initiated by the Federal Bureau of Investigations (FBI) in 2005, after he was

identified as having possible connections to Islamic terrorist groups operating in the United States and elsewhere. Between 2006 and 2009, investigative agents conducted surveillance of the conspirators and obtained hundreds of hours of video and/or audio recordings of the conspirators through the use of cooperating witnesses, wire communication intercepts, and/or the use of covert recording devices. In 2005, at the beginning of this investigation, Zak Boyd was 16 years old and was in high school. Between 2006-2009, Zak graduated from high school and attended one year of college at the University of North Carolina at Pembroke. Zak was a teenager during three of the five years of the FBI investigation. Zak was arrested at the age of 20 on July 27, 2009 and turned 21 and 22 years of age while in custody awaiting trial and/or sentencing in this matter.

## B. CRIMINAL RECORD

Zak Boyd has no criminal record, as outlined in paragraph 32 of the pre-sentence report. However, the enhancement for terrorism is applicable resulting in a criminal history of VI.

## C. EAGLE SCOUT

As outlined in the numerous character letters that were submitted to this Court, Zak accomplished the rank of Eagle Scout during his high school years. Not only was he a leader within his troop, but he also assisted other individuals with earning merit badges and other awards that ultimately resulted in these individuals achieving the rank of Eagle Scout. Zak was the motivator for these young men and was proud that he was able to lead these teenagers on the right path of leadership and honor. Finally, Zak was

instrumental in helping his younger brother Noah Boyd, receive an Eagle Scout ranking, as outlined in Noah's letter to this Court.

### D. ZAK'S COOPERATION WITH THE GOVERNMENT'S PROSECUTION OF OTHER DEFENDANTS.

As noted above, Zak's cooperated with the Government's investigation of the other defendants and testified as a Government witness at the trial of Hysen Sherifi, Omar Hassan, and Ziyad Yaghi. Zak met with Government agents and prosecutors several times prior to his testimony. It is respectfully submitted that Zak was truthful and straightforward in his testimony, providing both the good and bad for each side in the controversy—in other words, Zak told the truth regardless of whether it helped or hurt either side. The Government presented Zak's testimony to the jury as truthful testimony. This is reflected by the fact that the Government is expected to file a motion for downward departure under USSG 5K1.1 to reflect Zak's valuable cooperation. Zak asks the Court to consider his truthful cooperation as a factor meriting a mitigated sentence.

### E. DAD'S INFLUENCE OVER ZAK

As the Government has stipulated in the plea agreement, dad's influence over Zak was remarkable and it is important to note that Zak did not have any other family members to turn to during this time period as his dad preached radical Islam to the family. Zak had no aunts, uncles, or cousins nearby to confide in and to discuss these matters. All of these individuals lived up north or were not close by in North Carolina. He was almost always in his dad's company when jihad was discussed or debated among other individuals. The only adults that Zak had to confer with concerning the validity of his dad's view of religion were his dad and his mother. His dad was the authority and

4

Zak was not allowed or permitted to question his dad's instructions. Carol Hewitt, mother of Jordan, who was dating Zak during this time period, relates the following in her letter to the Court:

"At the end of his first year at school Zak had made some mistakes and they affected his grades and scholarship. He came home from school and Jordan went to Spain to study language for several weeks. It was during that time that Zak's family found out about his grades and also that he had been seeing Jordan. They were beyond upset, there was a huge struggle at the home and Zak's mother threatened she was calling his father. Zak was very afraid of his father's anger. He had stated several times his father was very physical with him and had beaten him up previously. Zak packed a few things and left the house in pajamas and no shoes. He walked several miles through the woods to get to his friend, Zack Hodges, mother's place of work. She later told me he begged her to take him to another state and hide him from his father. She did not think that the situation was a serious as it was and later said she wished she had taken him away. But she didn't, she dropped him off at my house."

"I arrived home from work to find Zak on the couch talking to my husband. He was very nervous and told us of the fight that ensued earlier. He asked if he could stay with us and we said yes. I told him that he would need to at some point discuss the situation with his family. As we spoke, Zak jumped off the couch and said 'that was my father that just drove by' and asked us not to tell him he was there. I said you need to talk to him and not run away. Zak ran out the back door. His father and sister pulled into the driveway. Daniel got out and came to the front door and asked if Zak was here. I said yes he is around back. Before I could get out any words to explain, Daniel was coming

from the back side of my house with Zak clutched in his hands. He was behind Zak and had his hands on Zak's arms steering him towards the car. Myriam opened the door and Daniel forced him in and slammed the door. I could see the fear in Zak's eyes. I will be forever sorry that I did not understand the seriousness of his plea and hide him somewhere."

"It was during this second meeting that Daniel and all the boys showed up at the door. I was very taken back at the appearance of Dylan, Zak and Noah. They had on clothing that looked raged and tattered and had no socks on with shoes that didn't look like they fit. They had always been well dressed in the fashion of their youth. Zak and Daniel sat across from my husband and me. He began with the same mantra. He explained that Zak was not worth the time and effort. That he had given him a chance to live up to his expectations and that after time he failed. Both Dylan and Zak made no eye contact with me. They sat dead still and expressionless. Both had wanted their father's approval so badly, and did not want to be ostracized from their family for not following their father to the letter. They did everything they could to please him. He seemed to be in total control over them. I was so worried about the boys at this point, they were shells of their previous selves."

### F.  DEATH OF LUQ, HIS BROTHER

By far, the largest impact on Zak's life has been the death of his brother, Luq Boyd. Luq and Zak were inseparable from an early age until the time of Luq's death in a fatal car accident in April 2007. Many neighbors and classmates thought that Luq and Zak were twins. They shared everything including sleeping in the same room for many years until the death of Luq. At the time of Luq's death, Zak was vulnerable, easily

susceptible to his dad's rantings and ravings about his radical views concerning jihad. During this time period of approximately one year, Zak basically existed from day to day grieving the loss of his best friend and younger brother. As noted in the character letters delivered to this Court, neighbors and friends describe the relationship between Luq and Zak and the affect that Luq's death had on Zak and the rest of the family. However, even though Zak was the closest to Luq, it is important to note that Zak was the individual who was there for his other siblings, Dylan, Maryam, and Noah to lean on as they mourned the death of their brother. Zak was very distraught and became depressed. He would visit several teachers at school, specifically, Carol Hewitt, and speak privately with her about his family dynamic. Zak would speak of the closeness Luq and he shared and the inability to talk to his parents about his loss. He was expected to be a man and not speak of the sorrow or of missing Luq. His father had planned a visit overseas to the dome of the rock before Luq's death for the two brothers and himself. Zak expressed to Ms. Hewitt that he really did not want to go anymore since Luq would not be going.

### G. THE FUTURE FOR ZAK BOYD

Zak is an intelligent, resourceful, and motivated young man who will excel in life. As indicated in the pre-sentence report, Zak has either been in school or worked his entire adult life to help support his education as well as his entire family. He has worked at CVS as well as Cracker Barrel during his high school years. Zak has the skills learned from his dad's drywall business to become an owner of a construction business once he is released from custody. Obviously, as a convicted felon at the age of 22, his employment opportunities will be limited to some type of small family business. Zak will enroll in

7

whatever courses and classes while incarcerated to better himself so that he will remain a productive member of society once he is released from custody.

## CONCLUSION

Zak asks this Court to consider a mitigating sentence based on his substantial assistance pursuant to a potential 5K1.1 Motion being filed by the Government. The defendant testified truthfully at trial, and has been truthful at all debriefings with the Government. Additionally, Zak requests this court to consider the Section 3553(a) factors in fashioning a judgment in his case, reflecting his history, background, cooperation, and the influence his father had on his young life until he was arrested at the age of 20. Zak Boyd respectfully submits that an individualized consideration of the law and facts in this case should result in a sentence far below the advisory guideline range.

This the 13th day of December, 2011.

/S/ Myron T. Hill, Jr.
Myron T. Hill, Jr.
State Bar No. : 12436
Browning & Hill, LLP
PO Box 859
Greenville, NC 27835
(252)758-1403
Fax: (252)758-5195
mhill@browning-hill.com
Counsel for Zak Boyd

# CERTIFICATE OF SERVICE

This is to certify that I am, and was at all times hereinafter mentioned, more than eighteen (18) years of age, that on the 13th day of December, 2011, I electronically filed this <u>Defendant's Sentencing Memorandum,</u> with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John Bowler<br>Barbara Kocher<br>Assistant U.S. Attorneys<br>John.s.bowler@usdoj.gove<br>Barb.kocher@usdoj.gov | Joe E. Zeszotarski, Jr.<br>jzeszotarski@poyners.com<br><br>R. Daniel Boyce<br>dboyce@nexenpruett.com |
| Jason Kellhofer<br>U.S. Dept. of Justice, NSD<br>Jason.kellhofer@usdoj.gov | James M. Ayers, II<br>jimayers2@embarqmail.com<br><br>Anes Subasic (by first class mail)<br>Wake County Jail<br>PO Box 2419<br>Raleigh, NC 27602 |
| Rosemary Godwin<br>Debra Graves<br>Rosemary_Godwin@fd.org<br>Debra_Graves@fd.org | |
| Robert J. McAfee<br>rjm@mcafee-law.com | Paul K. Sun, Jr.<br>paul_sun@elliswinters.com |

This 13th day of December, 2011.

                                /S/ Myron T. Hill, Jr.
                                Myron T. Hill, Jr.
                                State Bar No. : 12436
                                Browning & Hill, LLP
                                PO Box 859
                                Greenville, NC 27835
                                (252)758-1403
                                Fax: (252)758-5195
                                mhill@browning-hill.com
                                Counsel for Zak Boyd